**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
LETTITIA MCKINNEY,

                                            Plaintiff,

        -against-

THE CITY OF NEW YORK, JOHN DOE # 1, JOHN DOE # 2, JANE DOE # 1, police officer(s) of the New York City Police Department, the identity, number, and rank of whom is presently unknown,

                                            Defendants.
------------------------------------------------------------------------X

Civil Action No.
1:16-cv-02721

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff LETTITIA MCKINNEY, by and through her attorney, ABE GEORGE, ESQ., complaining of the defendants herein, upon information and belief, respectfully shows to this Court, and alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action stemming from a false arrest in which the plaintiff, LETTITIA MCKINNEY, seeks relief for the defendants' violations of her rights secured by 42 U.S.C. § 1983, by the United States Constitution, including its First, Fourth, and Fourteenth Amendments, and by the laws and Constitution of the State of New York.

2. Plaintiff seeks compensatory and punitive damages, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just and proper.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343, this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

5. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c), in that the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

**JURY TRIAL DEMANDED**

7. Plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

**PARTIES**

8. At all times relevant to this action, Plaintiff LETTITIA MCKINNEY is and was a resident of Kings County, New York.

9. Defendant CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as Defendant CITY OF NEW YORK's agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers. Defendant CITY OF NEW YORK was at all times relevant herein the public employer of Police Officers JOHN DOE #1 and JOHN DOE # 2 and JANE DOE, and other officers yet to be identified and named.

10. Defendants JOHN DOE #1, JOHN DOE #2, and JANE DOE, are and were at all times relevant herein duly appointed and acting officers, servants, employees, and agents of the NEW YORK CITY POLICE DEPARTMENT (hereinafter "NYPD"), a municipal agency of Defendant CITY OF NEW YORK.

11. At all times relevant herein, the individual defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and/or usages of the State of New York and the NYPD, in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by the CITY OF NEW YORK and the NYPD, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. They are sued individually and in their official capacity.

12. By the conduct, acts, and omissions complained of herein, Defendants JOHN DOE #1, JOHN DOE #2, and JANE DOE, violated clearly established constitutional standards under the First, Fourth, and Fourteenth Amendments to the United States Constitution of which a reasonable police officer under the circumstances would have known.

**NOTICE OF CLAIM**

13. Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiff's claim against Defendant CITY OF NEW YORK, Defendant NYPD, and Defendant JOHN DOE #1.

14. The City assigned a claim number to Plaintiff's claim, and Plaintiff was subjected to an examination pursuant to N.Y. Gen. Mun. L. Sec. 50-h.

15. To date, Plaintiff has received no answer, and no compensation has been offered by Defendant CITY OF NEW YORK in response to this claim.

16. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

**STATEMENT OF FACTS**

17. On the evening of August 18, 2015, plaintiff, a law-abiding resident of Brownsville, Brooklyn, became the unwitting victim of a humiliating and unjustified search, seizure, and arrest at the hands of the NYPD. The incident culminated with the NYPD charging plaintiff with "Obstructing Pedestrian Traffic." Not surprisingly, the court swiftly dismissed the charges levied by the NYPD against plaintiff in their entirety.

18. At approximately 11:40 p.m. on August 18, 2015, plaintiff left her mother's home with her friend and ten-year-old son, in the vicinity of Rockaway and Dumont Avenues in Brooklyn, New York.

19. At around that time, a group of teenagers, who were being pursued by police, had run past the plaintiff on Rockaway Avenue, continuing to run on Dumont Avenue

20. The NYPD caught up to one of the teenagers and was placing one of the youths in custody on the street on Dumont Avenue between Bristol and Chester Streets.

21. A crowd quickly gathered on sidewalk of the vicinity of Dumont Avenue between Bristol and Chester Streets.

22. Plaintiff joined the crowd gathered on the sidewalk on Dumont Avenue between Bristol and Chester Street, to observe the arrest which was taking place on the street in front of them.

23. Plaintiff removed a cellular phone from her pocket and raised it to record a video of the arrest which was taking place in front of her.

24. At around the time when plaintiff raised her cellular phone to record a video, Police Officer JOHN DOE #1[1], quickly confronted Plaintiff on the sidewalk and ordered her to leave.

25. In turn, plaintiff insisted that she, along with the rest of the crowd, were on a public sidewalk, and that she was not interfering with the police, either by her presence on a public sidewalk or her use of a recording device to video the police arrest.

26. Police Officer JOHN DOE #1 continued to instruct plaintiff that she alone had to leave the area.

27. Plaintiff continued to verbally contend that she was not interfering with the police, and insisted that she had a right to remain in the area.

28. At no point during the above-described police interaction did plaintiff use or threaten to use any physical force against any police officer of the NYPD.

29. Police Officer JOHN DOE #2 then approached from behind and instructed plaintiff, in sum and substance, that she should "just shut up."

30. Police Officer JOHN DOE # 2 then instructed Police Officer JOHN DOE #1 to arrest plaintiff.

31. Police Officers JOHN DOE #1 and JOHN DOE #2 grabbed plaintiff's hands, forcefully pulled them off her ten-year-old son, and used their much larger bodies to physically prevent plaintiff from moving freely.

---

[1] It is believed that JOHN DOE # 1 is an African American Police Officer with the first name of James and Tax ID number 954970, Command 0165, however his exact first and last name are not yet known.

32. When plaintiff asked what the NYPD was arrested her for, Police Officers JOHN DOE #1 and JOHN DOE #2 instructed her to remain quiet.

33. Police Officers JOHN DOE #1 and JOHN DOE #2 then forcefully placed plaintiff's arms behind her back, and handcuffed her.

34. Plaintiff's ten-year-old son was witnessing the whole event and began hysterically crying as he was watching his mother being placed in handcuffs being taken away from him.

35. Police Officer JOHN DOE #1 and JOHN DOE #2 escorted plaintiff on foot about a block until they reached a marked police car.

36. Police Officers JOHN DOE #1 and JOHN DOE #2 then searched plaintiff's person before placing her, still handcuffed, in the backseat of the marked police car. Plaintiff remained in the backseat of the marked police car for a period of time.

37. NYPD police officers then transported Plaintiff, a female defendant, to the precinct.

38. At the precinct, members of the NYPD, which included Police Officer JANE DOE, and other officers yet to be identified, again searched plaintiff's person and effects in full view of other prisoners never giving Plaintiff any privacy from male prisoners.

39. Following plaintiff's search, the NYPD removed plaintiff's handcuffs and placed plaintiff into a locked holding cell at the precinct.

40. While in the holding cell at the precinct, plaintiff was not free to leave.

41. Members of the New York Police Department detained Plaintiff for at least a half hour before she was released to her family.

42. Plaintiff never got a chance to record any of the street interactions between the police and the civilians likely serving JOHN DOE #1 and JOHN DOE # 2's purpose in arresting Plaintiff.

43. Later, NYPD police officers removed plaintiff from the locked holding cell and handed her a Desk Appearance Ticket, which charged her with "Obstructing Pedestrian Traffic."

44. Plaintiff timely appeared in court to respond and defend against the Desk Appearance Ticket.

45. A court dismissed the charges contained in plaintiff's Desk Appearance Ticket in their entirety.

46. Plaintiff LETTITIA MCKINNEY has never been arrested before and has no criminal convictions.

47. As a result of the events alleged herein, and due directly to the actions taken by the defendants, plaintiff LETTITIA MCKINNEY suffered and continues to suffer emotional trauma, discomfort, humiliation, fear, anxiety, and embarrassment, among other things.

### FIRST CLAIM: RETALIATORY FALSE ARREST
### FIRST AND FOURTEENTH AMENDMENTS AND 42 U.S.C § 1983

48. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

49. By the actions described above, the defendants arrested plaintiff in direct retaliation for attempting to record them on her cellular telephone, the content and viewpoint of plaintiff's speech, and for her lawful assembly and association on a public sidewalk, and the defendants did so without having probable cause to arrest plaintiff for any offense. The acts and

conduct of the defendants was the direct and proximate cause of injury and damage to plaintiff and violated her rights under the First and Fourteenth Amendments, as secured through 42 U.S.C. § 1983.

50. As a result of the foregoing, plaintiff was deprived of her liberty, was forced to halt her speech, association, and assembly, suffered psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**SECOND CLAIM: DEPRIVATION OF RIGHTS**
**FIRST, FOURTH, AND FOURTEENTH AMENDMENTS AND 42 U.S.C. § 1983**

51. Plaintiff realleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

52. The conduct and actions of defendants, acting in concert and under color of law, subjected plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of her rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable search and seizure of his person, including the excessive use of force; (b) freedom from arrest without probable cause; (c) freedom from false imprisonment; (d) freedom from abuse of process; and (e) the enjoyment of equal protection, privileges, and immunities under the laws.

53. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians, and to intervene where they observe another member of the NYPD or other law enforcement agency employing unjustified and excessive force against a civilian.

54. Defendants' violation of plaintiff's constitutional rights by failing to intervene in the arrest and seizure against plaintiff resulted in the injuries and damages set forth above.

55. Defendants' deprivation of plaintiff's constitutional rights results in the injuries and damages set forth above.

### THIRD CLAIM: MUNICIPAL LIABILITY FOR CONSTITUTIONAL VIOLATIONS
*MONELL* CLAIM AGAINST THE CITY OF NEW YORK 42 U.S.C. § 1983

56. Plaintiff realleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

57. Defendant CITY OF NEW YORK directly caused the constitutional violations suffered by plaintiff, and is liable for the damages suffered by plaintiff as a result of the conduct of the defendant police officers. The conduct of the defendant police officers was a direct consequence of policies and practices of Defendant CITY OF NEW YORK.

58. At all times relevant to this complaint, Defendant CITY OF NEW YORK, acting through the NYPD, had in effect policies, practices, and customs that condoned and fostered the unconstitutional conduct of the individual police officers involved in plaintiff's stop, seizure, search, and arrest, and were direct and proximate cause of the damages and injuries complained of herein.

59. The aforementioned customs, practices, procedures and rules of the Defendants CITY OF NEW YORK and NYPD include, but are not limited to: (a) arresting persons known to be innocent in order to meet "productivity goals"; (b) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet "productivity goals"; (c) failing to supervise, train, instruct and discipline police officers thereby

encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; (d) discouraging police officers from reporting the corrupt or unlawful acts of other officers; (e) retaliating against officers who report police misconduct; and (f) failing to intervene to prevent the above mentioned practices when they reasonably could have been prevented with proper supervision and training.

60. At the time of the aforementioned constitutional violations, Defendants CITY OF NEW YORK and NYPD were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of the CITY OF NEW YORK and NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact. In light of the extensive pattern of well settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but the CITY OF NEW YORK and NYPD made no meaningful attempt to prevent future constitutional violations.

61. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the following civil rights actions and parallel prosecutions of police officers against defendant CITY OF NEW YORK:

a. Schoolcraft v. City of New York, 10-CV-6005 (RWS) (S.D.N.Y) (police officer who exposed a precinct's polices and practices of illegal quotas for the issuance of summonses and arrests, falsifying evidence and suborning perjury alleges he was arrested and committed to a psychiatric facility in retaliation for exposing these practices and customs);

b.  Taylor-Mickens v. City of New York, 09-CV-7923 (RWS)(S.D.N.Y)(police officers at 24th precinct issue four summonses to a woman in retaliation for her lodging a complaint with the Civilian Complaint review Board against the precinct);

c.  People v. Pagan, 6416-2008 (Sup. Ct. N.Y. Co.) (officer swears out a false complaint and is convicted of falsifying police records);

d.  Lin v. City of New York, 10-CV-1936 (PGG) (S.D.N.Y) (officers arrest a person lawfully photographing an arrest of a bicyclist in Times Square and swear out criminal complaints that is contradicted by video evidence);

e.  Colon v. City of New York, 9-CV-0008 (JBW)(E.D.N.Y) (in an Order dated November 29, 2009 denying the City's motion to dismiss, wherein the police officers at issue were prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote: 'Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.'

f.  People v. Arbeedy, 6314-2008 (Sup. Ct. Kings Co.) (NYPD narcotics detective found guilty planting drugs on two innocent civilians; former undercover NYPD narcotics officer, Steve Anderson, testified that fellow narcotics officers routinely maintained a

stash of narcotics to plant on innocent civilians in order to help those officers meet arrest quotas; Mr. Anderson testified concerning the NYPD's practice of "attaching bodies" to the narcotics to make baseless arrests stating: "It was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators. Seeing it so much, it's almost like you have no emotion with it. The mentality was that they attach bodies to it, they're going to be out of jail tomorrow anyway, and nothing is going to happen to them anyway. That kind of came to me and I accepted it –being around so long, and being an undercover";

g. <u>Bryant v. City of New York</u>, 22011/2007 (Sup. Ct. Kings Co.) (Jury declares that NYPD officers acted pursuant to a City policy regarding the number of arrests officers were expected to make that violated plaintiff's constitutional rights and contributed to her arrest);

h. <u>Williams v. City of New York</u>, 06-CV-6601 (NGG) (E.D.N.Y.) (officers arrest plaintiff during a "vertical patrol" of a public housing project despite evidence that he had a legitimate reason to be on premises);

i. <u>MacNamara v. City of New York</u>, 04-CV-9216 (RJS)(JCF)(S.D.N.Y) (evidence of perjured sworn statements systematically provided by officers to attempt to cover up or justify unlawful mass arrests of approximately 800 people has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention);

j. <u>McMillan v. City of New York</u>, 04-cv-3990 (FB)(RML) (E.D.N.Y.)(officers fabricated evidence against an African-American man in Kings County and initiated drug charges against him, despite an absence of an quantum of suspicion);

12

  k. <u>Nonneman v. City of New York</u>, 04-CV-10131 (JSR)(AJP) (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicionless, racially-motivated stop-and-frisk of a group of Hispanic youths);

  l. <u>Richardson v. City of New York</u>, 02-CV-3651 (JG)(CLP) (E.D.N.Y.)(officers fabricated evidence including knowingly false sworn complaints, against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

  m. <u>White-Ruiz v. City of New York</u>, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y., 1997)(holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption");

  n. Exclusive: Muslim Woman Settles Racial Profiling Lawsuit with NYC but says Officials Refused to Meet with her to Discuss Police Abuse (Daily News, available at nydailynews.com/new-york/exclusive-woman-settles-racial-profiling-suit-nyc-article-1.2327196): After settling for over $37,000 after Mrs. Huq was arrested for Obstructing Pedestrian Traffic, police officials refused to change policy or meet to discuss additional training and supervision of officers;

  o. Two individuals were arrested after they filmed NYPD officers conduct stop-and-frisks at a car checkpoint. Christina Gonzales and Matthew Swaye said they were returning from a Bronx mall at about 10:30 p.m. when they noticed several vehicles stopped. When Gonzalez took out her camera to begin filming, they were arrested. DNA Info (May 21, 2013),

http://www.dnainfo.com/new-york/20130521/central-harlem/professional-agitators-on-nypd-wanted-flier-arrested-after-filiming-stop; and

p. On June 20, 2013, NYPD officers arrested a photographer taking photographs of a Bushwick police station when he refused to tell the officers why he was taking the photographs. Shawn Randall Thomas was given two summonses for Disorderly conduct. DNA Info (June 20, 2013), http://www.dnainfo.com/new-york/201306t20/bushwick/photographer-arrested-taking-pictures-of-police-station-house-bushwick).

62. The existence of the above-described unlawful de facto and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the Defendants CITY OF NEW YORK and NYPD.

63. The CITY OF NEW YORK knew or should have known that the acts alleged herein would deprive the plaintiff of her rights, in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.

64. The CITY OF NEW YORK is directly liable and responsible for the acts of the individual defendant police officers, because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them, and because it repeatedly and knowingly failed to enforce the rules and regulations of the CITY OF NEW YORK and NYPD, and to require compliance with the Constitution and laws of the United States.

65. Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY OF NEW YORK, have not taken steps to terminate these policies, practices, and/or customs, do not discipline individual police officers who engage in such policies, practices, an/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on

the exercise of their authority, and instead sanction and ratify these policies, practices, and/or customs through their active encouragement of, deliberate indifference to, and or reckless disregard of the effect of said policies, practices, and/or customs upon the constitutional rights of persons in the City of New York.

66. The aforementioned policies, practices, and/or customs of the CITY OF NEW YORK, of failing to supervise, train, instruct, and discipline police officers and encouraging their misconduct are evidence by the police misconduct detailed herein. Specifically, pursuant to the aforementioned policies, practices, and/or customs of the CITY OF NEW YORK, the individual defendant police officers felt empowered to conduct an unlawful stop, search, seizure, and arrest.

67. The injuries sustained by plaintiff were a direct and proximate result of the wrongful <u>de facto</u> policies and/or well-settled and widespread customs and practices, and of the knowing and repeated failure of the CITY OF NEW YORK and NYPD to properly supervise, train, and discipline their police officers.

## **FOURTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS COMMON LAW CLAIM**

68. Plaintiff realleges and incorporates by reference the allegation set forth in each preceding paragraph as if fully set forth herein.

69. The conduct of Defendant Police Officers JOHN DOE #1, JOHN DOE #2, JANE DOE, and other police officers of the NYPD, in physically restraining, searching, transporting, and detaining plaintiff, without provocation or justification, was extreme, outrageous, and utterly intolerable in a civilized community, and represented conduct that exceeded all reasonable bounds of decency.

70. The conduct of Defendant Police Officers JOHN DOE #1, JOHN DOE #2, JANE DOE, and others, described above, was intended to, particularly when committed in front of Plaintiff's child, did cause severe emotional distress to plaintiff.

71. The conduct of Defendant Police Officers JOHN DOE #1, JOHN DOE #2, JANE DOE, and others, was the direct and proximate cause of injury and damage to plaintiff, and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

72. As a result of the foregoing, Plaintiff was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### FIFTH CLAIM: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### COMMON LAW CLAIM

73. Plaintiff realleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

74. The conduct of Defendant Police Officers JOHN DOE #1, JOHN DOE, JANE DOE, and other police officers of the NYPD, in physically restraining, searching, transporting, and detaining plaintiff, without provocation or justification, particularly in front of Plaintiff's child, was careless and negligent as to the emotional health of plaintiff, and caused severe emotional distress to plaintiff.

75. The acts and conduct of Defendant Police Officers JOHN DOE #1, JOHN DOE #2, JANE DOE, and other police officers of the NYPD, was the direct and proximate cause of injury and damage to plaintiff, and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

76. As a result of the foregoing, plaintiff was deprived of her liberty, was subjected to serious physical and emotional pain and suffering, and was otherwise damaged and injured.

### SIXTH CLAIM: RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK FOR STATE LAW VIOLATIONS
### COMMON LAW CLAIM

77. Plaintiff repeats, realleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

78. The conduct of Defendant Police Officers JOHN DOE #1, JOHN DOE #2, and JANE DOE, alleged herein occurred while they were on duty and in uniform, and during the course and scope of their duties and functions as a New York City police officer, and while they were acting as an agent, officer, and employee of Defendant CITY OF NEW YORK.

79. As a result, Defendant CITY OF NEW YORK is liable to Plaintiff pursuant to the state common law doctrine of respondeat superior.

### SEVENTH CLAIM: NEGLIGENT SUPERVISION, RETENTION, AND TRAINING
### COMMON LAW CLAIM

80. Plaintiff repeats, realleges and incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

81. Defendant CITY OF NEW YORK negligently trained, retrained, and supervised Defendant Police Officers JOHN DOE #1, JOHN DOE #2, and JANE DOE. The acts and

conduct of Defendant Police Officers JOHN DOE #1, JOHN DOE #2, and JANE DOE, were the direct and proximate causer of injury and damage to Plaintiff, and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

82. As a result of the foregoing, Plaintiff was deprived of her liberty, was subjected to emotional pain and suffering, and was otherwise damaged and injured.

**WHEREFORE**, LETTITIA MCKINNEY demands judgment against the defendants individually and jointly and prays for relief as follows:

(a) That she be compensated for the violation of her constitutional rights, pain, suffering, mental anguish, and humiliation; and

(b) That she be awarded punitive damages against the defendants; and

(c) That she be compensated for attorneys' fees and the costs and disbursements of this action; and

(d) For such other further and different relief as to the Court may deem just and proper.

DATED:   May 30, 2016
         New York, New York

                                                      /s/
                                                 Abraham M. George
                                                 Law Offices of Abe George, P.C.
                                                 44 Wall Street, 2nd Floor
                                                 New York, NY 10005
                                                 (P) 212-498-9803
                                                 (F) 646-558-7533
                                                 E-mail: abe@abegeorge.lawyer
                                                 Attorney for Plaintiff